**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**IN RE:**

**EDWARD R. CURATOLA** **Case No:8:14-bk-05676-CED**
**VICTORIA M. CURATOLA** **Chapter 13**
**Debtors**
**____________________________________/**

## MOTION TO APPROVE PERMANENT MORTGAGE MODIFICATION

**NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING**

Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party-in-interest files a response within 21 days from the date set forth on the proof of service attached to this paper plus an additional three days for service. If you object to the relief requested in this paper, you must file your response with the Clerk of the Court at Sam M. Gibbons U.S. Courthouse, 801 N. Florida Avenue, Suite 555, Tampa, FL 33602 and serve a copy on the movant's attorney, Sandra H. Day, Esq. and/or David J. Day, Esq., PO Box 5535, Spring Hill, Florida 34611, and any other appropriate persons within the time allowed.

If you file and serve a response within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the response and may grant or deny the relief requested without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

**COMES NOW,** the Debtors, **Edward R. Curatola and Victoria M. Curatola,** by and through the undersigned attorney, and files this Motion to Approve Permanent Mortgage Modification and Request for Additional Presumptively Reasonable Fee, and states the following:

1. This case was instituted by the filing of a Voluntary Petition under Chapter 13 of the Bankruptcy Code on May 14, 2014.

2. Debtors own certain homestead real property located in Hernando County, Florida, commonly known as: 12384 Easthaven Drive Dottie Court Spring Hill, FL 34609, and more particularly described as, Hernando County Parcel #: R33 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 0000 0060

**Lot 6, Eastwood Estates, As Per Plat thereof recorded in Plat Book 31, Pages 40 and 41, Public Records of Hernando County, Florida.**

3. Debtors have filed this Motion pursuant to 11 U.S.C. §363 for the purpose of obtaining this Court's approval to proceed with the Permanent modification of the First Mortgage on the Homestead Property in accordance with the terms attached hereto as **Exhibit "A"**.

4. Modification of the First Mortgage is in the best interest of the Debtors, the creditors and this Bankruptcy Estate.

**WHEREFORE**, the Debtor respectfully requests that this Honorable Court Grant this Motion to Approve Permanent Mortgage Modification and granting such other and further relief as the Court deems appropriate.

Respectfully submitted this 30th day of September, 2015.

/s/ SANDRA H. DAY
SANDRA H. DAY, ESQUIRE
Attorney for Debtors
Florida Bar No: #0189499

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion to Approve Permanent Mortgage Modification, has been furnished electronically or via U.S. Mail to:

Assistant U.S. Trustee, 501 E. Polk Street, #1200, Tampa, FL 33602
Kelly Remick, Trustee, P.O. Box 6099, Sun City Center, FL 33571;
Debtors: Edward & Victoria Curatola 12384 Easthaven Drive, Spring Hill, FL 34609
Selene Financing: c/o Suzanne Delany, Esq. Attorney for Lender @ sdelany@storeylawgroup.com

on this 30th day of September, 2015.

/s/ Sandra H. Day
SANDRA H. DAY, ESQUIRE
Florida Bar No. 189499
The Day Law Office
P.O. Box 5535
Spring Hill, FL 34611
(352)684-6545
daylawofficebk@tampabay.rr.com
Attorney for Debtors

Loan No. 0010019297
Borrower: EDWARD R CURATOLA

Data ID: 116

SELENE FINANCE LP
LOAN RESOLUTION DEPARTMENT
9990 RICHMOND AVE., SUITE 400 SOUTH
HOUSTON, TEXAS 77042

August 14, 2015

VIA FEDERAL EXPRESS

EDWARD R CURATOLA AND VICTORIA CURATOLA
4108 DELTONA BLVD
SPRING HILL, FLORIDA 34606

Re: Loan No.: 0010019297
Property Address: 12384 EASTHAVEN DRIVE, SPRING HILL, FLORIDA 34609

Dear Borrower:

Enclosed please find the Loan Modification Document Packages ("Documents") for your review. If the terms are consistent with your understanding of the modified terms of your loan, please execute the Documents and return them to SELENE FINANCE LP at the address referenced above. The original Documents should be returned on or before **09/03/15**, a prepaid Federal Express envelope is enclosed for your convenience.

The modified principal and interest payment is **$1,369.79** plus an escrow payment for taxes and insurance initially estimated to be **$439.82** for a total monthly payment of **$1,809.61.**

Please note the following:

- No changes may be made to the Documents
- The Loan Modification Agreement is required to be signed before a notary
- All borrowers must sign all the Documents
- All Documents must be dated on the day that they are signed
- Return 2 sets of fully executed, notarized Documents and Your First Monthly Payment
- Retain one set of the Documents for your records

SELENE FINANCE LP values its customer relationships and wants this opportunity to modify your loan to be a positive experience. If you have any questions about your Documents, or you would like additional information please don't hesitate to contact your Loan Resolution Consultant at **877-768-3759.**

Sincerely,

SELENE FINANCE LP
Loan Resolution Department

**EXHIBIT A**

Loan No: 0010019297
Borrower: EDWARD R CURATOLA

Data ID: 116

# COMPLIANCE AGREEMENT

In consideration of SELENE FINANCE LP, as servicer for CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13 ("Lender") modifying the first lien mortgage loan (the "Loan"), in connection with the property located at 12384 EASTHAVEN DRIVE, SPRING HILL, FLORIDA 34609 (the "Modification"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Modification. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Modification to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument underlying the Modification, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVICE OF COUNSEL.

Date: Sept 9, 2015

EDWARD R CURATOLA —Borrower

VICTORIA CURATOLA —Borrower

Loan No. 0010019297
Borrower: EDWARD R CURATOLA

Data ID: 116

9990 Richmond Avenue
Suite 400 South
Houston, TX 77042
Telephone (877) 768-3759
Fax (866) 926-5496
www.selenefinance.com

Hours of Operation (CT)
Monday - Thursday: 8 a.m. - 7 p.m.
Friday: 8 a.m. - 5 p.m.

August 14, 2015

EDWARD R CURATOLA AND VICTORIA CURATOLA
4108 DELTONA BLVD
SPRING HILL, FLORIDA 34606

Re: Loan #: 0010019297
Property: 12384 EASTHAVEN DRIVE
SPRING HILL, FLORIDA 34609

Dear Mortgagor(s):

Enclosed is an application to participate in the Automated Clearing House (ACH) Auto payment Service. Selene Finance LP ("Selene") will be using this application to process your monthly payments. Please complete the form and return it to the address referenced below. Please verify the proper ABA/Transit number with your financial institution's ACH department to avoid any delays in the drafting of your payment.

Selene Finance LP
P.O. Box 422039
Houston, TX 77242-4239
ATTN: Customer Service Department

You will receive a confirmation letter from us advising you of the first scheduled drafting date. It will be necessary for you to make payments by check or money order until you receive this confirmation.

If we may be of further assistance, please feel free to contact our Customer Service Department toll free at (877) 768-3759.

Sincerely,

Customer Service Department

Enclosure: ACH Application

Selene Finance LP is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

If you received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property. Also, if you are involved in a bankruptcy please note that Selene Finance LP intends to fully comply with the Code including, without limitation, the automatic stay and the provisions of any confirmed bankruptcy plan.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Selene will not foreclose on the property of a servicemember or his or her dependent during that time, unless pursuant either to a court order or a servicemember's written waiver agreement.

SELENE FINANCE LP
PREAUTHORIZED AUTOMATIC CLEARING HOUSE (ACH)
DEBITS AGREEMENT (DIRECT WITHDRAWAL)

| Borrower Name | Co-Borrower Name |
|---|---|
| Property Address | Phone |
| City, State, Zip | Selene Loan #<br>0010019297 |

The undersigned hereby authorizes Selene Finance LP ("Selene") to initiate electronic transfers from my (our) account indicated below, and from the financial institution named below (the "Bank"), to debit the same from such account. If funds are mistakenly taken from my (our) account, I (we) authorize Selene to initiate a corrective (credit) entry, and provide such to the Bank.

The name, address, account number and routing number of my (our) bank is:

| Bank Name | Bank Routing (ABA #)* |
|---|---|
| Address | Account # |
| City, State, Zip | Type of Account<br>☐ Checking ☐ Savings |

How to identify routing/aba # and account number on checks or deposit slips (checking or savings):

|:123456789 |: 123456789123 ||•1234
Bank Routing Number
Bank Account Number
Check Number (Do not use)

I (We) wish to have my (our) monthly contractual payment withdrawn by using the following option - please check one (1) option:

- Please note that your loan must be current on the day we receive this completed enrollment form in order to begin the program.
- Also for all options, if your draft day falls on a weekend or holiday the funds will be withdrawn on the next business day.

**Payment Change**
If the regular monthly contractual payment changes per your note, Selene will provide written notification at least twenty-five (25) days prior to each scheduled payment change.

☐ **Option A Single Monthly Contractual Payment** This option will draft and apply twelve (12) contractual payments each calendar year. Upon receipt of this form, the draft will begin the next calendar month.

Choose a calendar day below and a payment will be withdrawn the same day each month:

Check one (1): ☐ 1st ☐ 5th ☐ 10th ☐ 15th ☐ Other ____________ (but no later than the 15th day of the month)

- To begin this option, this completed form must be received by Selene ten (10) days before your next payment is due.
- If the form is received after the ten (10) day period, you hereby authorize Selene to perform a One-Time Draft from your bank account. This One-Time Draft will occur on the same day of the month as your recurring ACH (chosen above) and will be for one full contractual monthly payment.
- Any electronic draft attempt by Selene that is not honored by your banking institution shall deem this ACH Debits Agreement null and void and your loan will be removed from the ACH program.

☐ **Option B Bi-Weekly Payments** This option will draft an installment equal to half of your monthly contractual payment every fourteen (14) days.

- A total of twenty-six (26) installments will be applied as twelve (12) contractual payments and two (2) principal reductions each calendar year. The two (2) principal reductions are half of a contractual payment.
- To begin bi-weekly payments this completed form must be received ten (10) days before your payment due date. In addition to your loan being current, it must be pre-paid by one full contractual monthly payment.
- The first installment will be drafted on the first Friday of the same month the ACH drafting begins.
- The first installment drafted will be held in the loan's Suspense Account until the second installment is drafted. The full contractual payment will then be applied to your loan the next business day.
- In a month that has three (3) installments drafted, the third (3rd) draft amount will be applied to reduce the principal balance of your loan. This occurs in two (2) months each calendar year.
- Any electronic draft attempt by Selene that is not honored by your banking institution, shall deem this ACH Debits Agreement null and void and your loan will be removed from the ACH program.

☐ **Additional Principal Payment** In addition to the monthly contractual payment due under my (our) loan, I (we) wish to have additional funds taken with each contractual payment to be applied to PRINCIPAL. If YES, enter AMOUNT $____________. For Option B a principal payment will be divided into two (2) one-half payments and drafted along with each of your one-half contractual payments.

- This authority to perform electronic transfers is to remain in full force and effect until Selene has received written notification from me (or either of us) of its termination in time to afford Selene a reasonable opportunity to act on it, but in no event less than thirty (30) business days prior to the applicable draft date.

- Until such request is received by Selene, I (we) agree that Selene shall be fully protected in complying with the terms of this agreement. If your loan should become delinquent in excess of thirty-one (31) days, your loan may be removed from the ACH program and you will be required to cure any default and re-quality for the ACH program.

- I (We) acknowledge that if I (we) enter into litigation with regard to a loan secured by this property or file for protection under the US Bankruptcy Code, this agreement will immediately become null and void.

Signature(s) as they appear on the promissory note:

..........................................................................................(Seal)
EDWARD R CURATOLA —Borrower

..........................................................................................(Seal)
VICTORIA CURATOLA —Borrower

**Common Reasons for Rejection**

- Borrower did not indicate a draft date on form.

- Loan is not sufficiently pre-paid.

- Agreement is not executed and/or dated.

- Active bankruptcy case - drafting is not available on loans in bankruptcy.

- Certain banks, such as BOA, Chase and Wells Fargo have multiple ABA/Routing numbers, therefore, Selene must have something from the borrower's bank indicating the bank Routing/ABA Number, account number and the borrower's name on the account.

Selene Finance LP
P.O. Box 422039
Houston, TX 77242-4239
Fax: (866) 926-5496
Attn: Customer Service

Prepared by: Michael L. Riddle
Middleberg Riddle Group
717 N. Harwood, Suite 1600
Dallas, TX 75201

Recording Requested By and Return To:
SELENE FINANCE LP
CUSTOMER SERVICE
9990 RICHMOND AVE, STE 400 S
HOUSTON, TX 77042

Folio: R3322318170100000060

[Space Above This Line For Recording Data]

Loan No: **0010019297** Data ID: **116**
Borrower: **EDWARD R CURATOLA**
Original Recorded Date: **August 26, 2003**

Modified Interest Bearing Amount: **$327,750.00**
Original Principal Amount: **$322,700.00**
Modified Principal Amount: **$418,919.90**

# LOAN MODIFICATION AGREEMENT
**(Providing for Fixed Interest Rate with Balloon)**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

This Loan Modification Agreement ("Agreement"), made this ________ day of ________________, 20____, between **EDWARD R CURATOLA AND VICTORIA CURATOLA , HUSBAND AND WIFE** , whose address is **12384 EASTHAVEN DRIVE, SPRING HILL, FLORIDA 34609** ("Borrower") and **SELENE FINANCE LP, as servicer for CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13, 9990 RICHMOND AVE., SUITE 400 SOUTH, HOUSTON, TX 77042** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **August 15, 2003** and recorded in **BK 1715 PG 1949** of the Official Records of the County Recorder's or Clerk's Office of HERNANDO COUNTY, FLORIDA and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at:

**12384 EASTHAVEN DRIVE, SPRING HILL, FLORIDA 34609**
[Property Address]

the real property described being set forth as follows:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **August 1, 2015**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$418,919.90**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.
2. **$91,169.90** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$327,750.00.** Interest will be charged on the **Interest Bearing Principal Balance** at the yearly rate of **4.000%**, from **August 1, 2015**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,369.79**, beginning on the **first** day of **September, 2015**, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of **4.000%** will remain in effect until **Interest Bearing Principal Balance** and all accrued interest thereon have been paid in full. The new Maturity Date will be **August 1, 2055.**

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.
4. If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7. Borrower understands and agrees that:
   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.
   (c) Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.
   (d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.
   (e) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.
   (f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.
   (g) Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

(h) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

8. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

9. Borrower represents and warrants that all of the Mortgaged Premises are free and clear of all liens and all real property taxes and personal property taxes for the year **2014** and all prior years.

Loan No: 0010019297 Data ID: 116

Signed sealed and delivered in the presence of:

Cameron Rodriguez
Witness Signature and Printed Name

Carolyn A Murray
Witness Signature and Printed Name

.....................................................................(Seal)
EDWARD R CURATOLA —Borrower

.....................................................................(Seal)
VICTORIA CURATOLA —Borrower

**- Borrower Acknowledgment -**

STATE OF FLORIDA §
COUNTY OF HENANDO §

The foregoing instrument was acknowledged before me this 9th day of September, 2015, by

EDWARD R CURATOLA AND VICTORIA CURATOLA
who [strike the following that does not apply] are personally known to me/have produced FL drivers lic as identification.

Notary Public

Carolyn A Murray
(Name of Acknowledger Typed, Printed or Stamped)

My commission expires: Aug 6 2016

CAROLYN A MURRAY
MY COMMISSION # EE222724
EXPIRES August 06, 2016
(407) 398-0153
FloridaNotaryService.com

Loan No: **0010019297** Data ID: **116**

Signed sealed and delivered in the presence of:

______________________________
Witness Signature and Printed Name

______________________________
Witness Signature and Printed Name

Lender: SELENE FINANCE LP, as servicer for CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13

By:______________________________

Its: ______________________________
(Printed Name and Title)

9990 RICHMOND AVE., SUITE 400 SOUTH
HOUSTON, TEXAS 77042

Date of Lender's Signature: ____________________

**- Lender Acknowledgment -**

STATE OF TEXAS §
COUNTY OF HARRIS §

The foregoing instrument was acknowledged before me this __________ day of ____________________, 20______, by ______________________________, ______________________________ of SELENE FINANCE LP, as servicer for CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13, on behalf of the entity. He/She [strike the following that does not apply] is personally known to me/has produced ______________ as identification.

______________________________
Notary Public

______________________________
(Name of person taking acknowledgment Typed, Printed or Stamped)

My commission expires:____________________

**FLORIDA LOAN MODIFICATION AGREEMENT** - Single Family - **Fannie Mae Uniform Instrument**
**Revised by Middleberg Riddle Group** **Form 3179 1/01 (rev. 04/14)** *(Page 7 of 8 Pages)*

Loan No: **0010019297** Data ID: **116**
Borrower: **EDWARD R CURATOLA**
Property Address: **12384 EASTHAVEN DRIVE, SPRING HILL, FLORIDA 34609**

## LEGAL DESCRIPTION

LOT 6, EASTWOOD ESTATES, AS PER PLAT THEROF RECORDED IN PLAT BOOK 31, PAGES 40 AND 41, PUBLIC RECORDS OF HERNANDO COUNTY, FLORIDA.

Loan No. 0010019297 Data ID: 116
Borrower: EDWARD R CURATOLA

# LOAN MODIFICATION AGREEMENT RIDER

THIS LOAN MODIFICATION AGREEMENT RIDER is made this __________ day of __________________, 20____, by and between the undersigned borrower (the "Borrower") and SELENE FINANCE LP, as servicer for CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13, (the "Lender") and is incorporated into and shall be deemed to amend and supplement that certain LOAN MODIFICATION AGREEMENT (the "Agreement") of the same date executed by the Borrower and Lender as of the date above.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Agreement, Borrower and Lender further covenant and agree as follows:

1. Costs and Expenses

All costs and expenses incurred by Lender in connection with this Agreement shall be borne by Lender and not paid by Borrower.

2. Escrow Items

Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked. Borrower is hereby advised that beginning on the monthly payment due date set forth above, the amount of Escrow Items will be included with Borrower's monthly payment of principal and interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in this LOAN MODIFICATION AGREEMENT RIDER.

....................................................(Seal)
EDWARD R CURATOLA —Borrower

....................................................(Seal)
VICTORIA CURATOLA —Borrower

Loan: 10019297

# PRINCIPAL REDUCTION AGREEMENT

This Principal Reduction Agreement ("Agreement") executed by and between Edward R. Curatola and Victoria Curatola ("Borrower(s)") and Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2012-13 ("Lender"), amends and supplements;

1. The Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated January 9, 2002, and executed by Borrower(s).

2. The Note, also executed by Borrower(s), and bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property."

All capitalized terms not otherwise defined herein shall have the meaning ascribed to same in the Loan Modification Agreement by and between Borrower(s) and Lender dated August 13, 2015("Loan Modification Agreement").

This Agreement shall commence on the Effective Date as defined in Section 3 below.

This Agreement includes and incorporates by reference, as set forth herein in full, the terms and conditions of the Loan Modification Agreement.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

3. The Borrower(s) agree to submit monthly payments in the amount of for 480 months beginning 9/1/2015 ("Effective Date") and continuing thereafter on the 1st of each month thereafter ("Monthly Payment").

   Principle Reduction in the amount of $91,169.90 over the next 3 years. 1/3 forgiven each year on the anniversary of the Initial Modified Payment Date which is 09/1/16, 09/1/17 & 09/1/18. The borrower is eligible to have some principal forgiven on a deferred basis. So long as the modified loan remains in good standing, we will forgive $30,389.96 of the principal balance of the loan each year on the anniversary of your first modified payment date for three consecutive years. You will lose this benefit if your modified loan loses good standing at any time during this three year period.

   In consideration for the aforementioned Monthly Payment being remitted timely and as agreed upon herein, the Lender shall forgive $91,169.90 of the New Principal Balance. In the event a Monthly Payment is not remitted as agreed upon herein, the Borrower(s) shall forfeit the Deferred Principal Balance and this Agreement shall terminate immediately and the entire past-due amount shall become due and payable.

4. Any portion of the Deferred Principal Balance waived pursuant to Section 3 above shall be reported to the Internal Revenue Service (IRS) on Form 1099-C as debt forgiveness. (We suggest that you contact the IRS or your tax preparer to determine if you have any tax liability.)

5. IT IS HEREBY UNDERSTOOD AND AGREED BETWEEN BORROWER(S) AND LENDER THAT IF BORROWER(S) SHALL FAIL TO REMIT ANY OF THE AFOREMENTIONED MONTHLY PAYMENTS AS THEY BECOME DUE, OR IF ANY MONTHLY PAYMENT REMITTED BY BORROWER(S) UNDER THIS AGREEMENT IS RETURNED FOR NON-SUFFICIENT FUNDS, THEN THIS AGREEMENT SHALL BECOME NULL AND VOID, AND THE ENTIRE PAST DUE AMOUNT SHALL BECOME IMMEDIATELY DUE AND PAYABLE.

SIGNATURE(S) REQUIRED:

The Borrower(s) agrees to the terms of this Agreement and the terms of the Loan Modification Agreement as indicated by signing below:

_______________________________ Sept 9, 2015
Edward R. Curatola Date

_______________________________ Sept 9 2015
Victoria Curatola Date

Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2012-13

By: _______________________________ _______________________________
Date

Its: _______________________________

## ADDENDUM TO LOAN MODIFICATION AGREEMENT

This Addendum to Loan Modification Agreement is effective as of the date of execution by all parties hereto (the "Addendum"), by and between the undersigned borrower ("Borrower") and SELENE FINANCE LP, as Servicer for **Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2012-13** (the "Lender") and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement (the "Agreement") being executed simultaneously herewith.

## RECITALS:

WHEREAS, Borrower and Lender entered into the Agreement;

WHEREAS, Borrower, on the same date of the Agreement, executed a Compliance Agreement, which obligated Borrower to fully cooperate with Lender to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Agreement;

WHEREAS, Lender has discovered an omission in the Agreement that was intended to be included as part of the express terms thereof relating to liability for attorneys' fees;

WHEREAS, Lender, under the terms and provisions as contemplated in the Compliance Agreement, has requested Borrower to execute this Addendum for the purposes of correcting the omission;

IT IS THEREFORE AGREED TO AS FOLLOWS:

1. The foregoing Recitals are true and correct and are hereby incorporated by this reference.

2. All terms of the Agreement that do not conflict with the terms of this Addendum shall remain in full force and effect.

3. The Borrower hereby agrees to release and forever discharge Lender and each of its parents, subsidiaries, affiliates, officers, directors, shareholders, partners, attorneys, trustees, predecessors, successors, representatives, insurers, assignees, agents, employees, administrators, and all persons acting by, through or in any way on behalf of Lender of and from any and all claims, debts, defenses, liabilities, costs, attorney's fees, actions, suits at law or equity, demands, contracts, expenses, damages, whether general, specific or punitive, exemplary, contractual or extra-contractual, and causes of action of any kind or nature which Borrower may now have or claim to have against Lender, including without limitation all claims or causes of action which in any way, directly or indirectly, or in any other way arises from or are connected with or which could have been asserted in connection with the pending foreclosure or litigation (the "Action"), and any claim, cause of action, damages, promises or demands which could have been asserted in the Action, which may exist from the beginning of time to the date of this Agreement; and both Lender and Borrower further covenant and agree that this Agreement may be pleaded or asserted by or on behalf of Lender as a defense and complete bar to any action or claim that may be brought against

or involving Lender by anyone acting or purporting to act on behalf of the Borrower with respect to any of the matters within the scope of this Agreement excepting only the obligations of the Lender and Borrower under this Agreement. Further, Borrower agrees that Lender and Borrower shall each be responsible for their own attorneys' fees and costs arising from or otherwise related to the Action.

4. This Agreement may be executed in counterpart facsimile signatures and all such counterparts shall constitute a single form of this Agreement.

**IN WITNESS WHEREOF, the Parties hereto have caused this document to be executed on the date set out above.**

Selene Finance, LP
as Servicer for **Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2012-13**

By:

Its:

Borrower
Signature: